UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KEVIN JOHNSON,<br><br>                              Plaintiff,<br><br>       v.<br><br>NEWTON, *et al.*,<br><br>                              Defendants. | Case No. 3:16-cv-00582-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>Re: ECF No. 18 |

  This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

  Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 18, 18-1 to 18-7.) Plaintiff filed a response. (ECF No. 29.) Defendants filed a reply. (ECF No. 30.)

## **I. BACKGROUND**

  Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Pl.'s Compl., ECF No.5.) The events giving rise to this action took place while Plaintiff was housed at Southern Desert Correctional Center (SDCC). (*Id.*)

  The complaint was screened, and Plaintiff was permitted to proceed with the following claims: (1) a retaliation claim in Count I against Newton and Sanchez based on allegations that Newton assaulted Plaintiff in retaliation for using the prison grievance system, and that Sanchez assaulted him for telling John Doe 1 about Newton's assault in the context of seeking medical care for his injuries; (2) an excessive force claim in Count I against Newton, Sanchez, and Moten based on allegations that Newton kneed Plaintiff in the head while Plaintiff was medically seizing after Plaintiff complained about Newton's actions, causing a head injury and concussion-like

symptoms; that Sanchez handcuffed Plaintiff in retaliation for his disclosure to medical personnel of Newton's assault, tightly enough to cause nerve and ligament damage and refused to loosen the handcuffs when Plaintiff showed signs of injury and distress; and, Moten stood over Plaintiff and failed to intervene; (3) an Eighth Amendment deliberate indifference to serious medical needs claim in Count II against defendants Nurse John Doe 1, Doctor/Provider John Doe 3, and Sergeant John Doe 4 based on allegations that John Doe 1 failed to examine or treat Plaintiff for his head injury to cover up the assault by Newton; that Doe 3 refused to provide treatment for his head and wrist injuries; and that Doe 4 responded to Plaintiff's emergency grievance for immediate medical care by denying the request, and Plaintiff suffered unnecessary pain and injury; (4) an Eighth Amendment deliberate indifference to safety claim in Count II against John Doe 1 and 2 based on allegations they witnessed Sanchez's alleged assault of Plaintiff, but did nothing to intervene. (Screening Order, ECF No. 4.)

Service was accepted on behalf of Moten and Sanchez on November 29, 2017. (ECF No. 13.) A summons was issued for Cory Newton on November 30, 2017, but was returned unexecuted on January 1, 2018. (ECF Nos. 17, 21.) On January 23, 2018, Plaintiff filed a motion for extension of time to serve Newtown. (ECF No. 23.) The court granted that motion on January 24, 2018, giving Plaintiff until February 28, 2018 to serve Newton. (ECF No. 26.) No proof of service was filed as to Newton, and he was dismissed from the case without prejudice pursuant to Federal Rule of Civil Procedure 4(m) on April 12, 2018. (ECF No. 35.) Plaintiff did not timely file a motion to substitute in or otherwise amend with respect to any of the Doe defendants named in the complaint; therefore, the case is currently proceeding only against Moten and Sanchez for the retaliation and excessive force claims against them in Count I. The court recommends dismissal of the doe defendants and claims asserted against them in Count, without prejudice, as Plaintiff has failed to name them as defendants ten months after the complaint was filed.

Defendants filed their motion for summary judgment on January 8, 2018. (ECF Nos. 18, 18-1 to 18-7.)

On January 11, 2018, a scheduling order was entered setting a discovery completion date of April 11, 2018; a discovery motion deadline of April 25, 2018; and the deadline for filing

motions for summary judgment of May 11, 2018. (ECF No. 22.) Plaintiff filed a motion for an order staying the motion for summary judgment until the completion of discovery. (ECF No. 24.) The court interpreted this as a request for an extension of time under Federal Rule of Civil Procedure 56(d) to complete discovery on issues relevant to the motion for summary judgment. (*See* ECF No. 25.) The court denied the motion, but gave Plaintiff additional time to file a response to Defendants' motion for summary judgment: up to February 28, 2018. (*Id.*) Plaintiff was advised that any future motion to extend the time to respond to the motion for summary judgment must explain what discovery was completed and what additional discovery is necessary to respond to the motion. (*Id.*)

Plaintiff filed his response to the motion for summary judgment on February 27, 2018. (ECF No. 29.) Defendants filed their reply brief on March 5, 2018. (ECF No. 30.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Rule 56(d)**

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

> Under Fed. R. Civ. P. 56(f) [now 56(d)], a trial court may order a continuance of a motion for summary judgment if the party requesting a continuance submits affidavits showing that, without Rule 56 assistance, it cannot present facts necessary to justify its claims. The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment. … Failure to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment.

*Family Home and Finance Center, Inc. v. Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (internal quotation marks and citations omitted).

Plaintiff previously filed a motion for an order staying the motion for summary judgment while discovery was completed. (ECF No. 24.) The court interpreted this as a request for an extension of time to respond to the motion under Rule 56(d). The court denied the motion (as Plaintiff did not state what discovery was necessary to respond to the motion), but nevertheless gave Plaintiff additional time, up to February 28, 2018, to file a response to the motion for summary judgment. (ECF No. 25.) The court specifically advised Plaintiff that any future motion to extend the time to respond to the motion for summary judgment must explain what discovery was completed and what additional discovery is necessary to respond to the motion. (*Id*.)

Plaintiff filed his response to the motion for summary judgment on February 27, 2018. (ECF No. 29.) In the response he stated that until discovery was completed he was prejudiced in his ability to cite facts opposing the motion for summary judgment, citing Rule 56(d). (ECF No. 29 at 2.) Nevertheless, Plaintiff went on to include an affidavit that sets forth his version of events in response to the motion for summary judgment, and submitted various exhibits. (*Id*. at 3-15.)

On April 10, 2018, Plaintiff filed a motion for extension of time to complete discovery. (ECF No. 32.) The next day, the court entered an order granting the motion and establishing new scheduling order deadlines: the discovery completion deadline was extended to May 26, 2018; the discovery motion deadline was extended to May 30, 2018; the dispositive motion deadline was extended to June 25, 2018. (ECF No. 33.)

In light of the court order extending the discovery completion deadline to May 26, 2018, on May 23, 2018, the court issued a minute order that also gave Plaintiff up to Friday, June 8, 2018, to file a supplemental response to Defendants pending motion for summary judgment, and gave Defendants up to June 15, 2018, to file a supplemental reply brief. (ECF No. 37.)

Plaintiff did not file a supplemental response. Nor did he file a motion seeking a further extension of time to file a supplemental response.

On June 6, 2018, he filed the Motion for an Order Compelling Discovery. (ECF No. 38.) The court has issued an order denying that motion for failing to comply with the meet and confer

1   requirements of Federal Rule of Civil Procedure 37 and Local Rule 26-7.

2   While Plaintiff states generally that he cannot establish facts essential to respond to the
3   motion for summary judgment until discovery is completed, he has not stated the *specific* facts he
4   hopes to elicit from further discovery or how they are essential to opposing the motion for summary
5   judgment. Moreover, the court has granted Plaintiff several extensions of time to complete
6   discovery *and* to supplement his response to the motion for summary judgment. Yet, Plaintiff has
7   not filed a supplemental response.

8   Plaintiff's motion to compel, which has been denied without prejudice for failing to comply
9   with the meet and confer requirements, sought the production of documents from defendants.
10  (ECF No. 38.) Defendants' response to the motion to compel indicates that Plaintiff sent a letter
11  requesting a supplemental response to certain requests for documents, including a request for
12  colored photographs of his alleged injuries and video evidence of the incident. (ECF Nos. 40, 40-
13  2.) Defendants' response to the letter, dated May 30, 2018, indicated that color copies of the
14  photographs of his alleged injuries would be produced, but they stated that there was no video
15  evidence as it is recorded over in the ordinary course of business. (ECF No. 40-4.) Plaintiff has
16  not made any sort of filing where he seeks to submit the color photographs of his alleged injuries
17  in support of his response to the motion for summary judgment. Insofar as the video evidence is
18  concerned, Defendants letter represents that any video evidence has been recorded over, such that
19  there would be no video evidence to submit in response to the motion for summary judgment.
20  Plaintiff appears to argue that the video evidence was wrongfully destroyed, and if that is the case,
21  he may make a spoliation motion if he deems it appropriate.

22  In sum, Plaintiff has never made a sufficient request under Rule 56(d) by setting out the
23  facts he hopes to elicit from discovery, and how they are essential to oppose the motion for
24  summary judgment. Moreover, he has set forth facts supporting his version of events in his
25  affidavit filed in response to the motion for summary judgment. Therefore, to the extent his
26  response to the motion for summary judgment can be construed as requesting that the court defer
27  ruling on the motion, that request should be denied.

28

**B. Allegations and Argument**

Plaintiff alleges that Newton assaulted him in retaliation for using the prison grievance system, and that Sanchez assaulted him by handcuffing him tightly enough to cause nerve and ligament damage in in retaliation for disclosing Newton's assault of him to medical personnel.

Defendants argue that the retaliation claim against Sanchez fails because Sanchez handcuffed Plaintiff only after he took a fighting stance, causing Sanchez to fear for his safety, and so Sanchez did not handcuff Plaintiff in retaliation for informing medical of the alleged assault by Newton.

Plaintiff alleges that Sanchez handcuffed Plaintiff tightly enough to cause nerve and ligament damage, and refused to loosen the handcuffs when Plaintiff showed signs of injury and distress. He avers that Moten stood over Plaintiff and failed to intervene.

Defendant Sanchez argues he handcuffed Plaintiff only after Plaintiff took a fighting stance directed at Sanchez, causing Sanchez to fear for his safety. Defendant Moten similarly argues that the placement of the handcuffs on Plaintiff by Sanchez was justified, the alleged wrist injuries were minor, if non-existent, and the delay in removing/loosening the handcuffs was caused by Plaintiff's behavior.

In support of their argument Defendants provide a copy of the NDOC Investigation Detail Report. (ECF No. 18-1.) Sanchez's report states that while he was assigned to the infirmary at SDCC on February 2, 2014, he was escorting Plaintiff to the holding cell, and Plaintiff was agitated because he could not go back to his unit right then. (ECF No. 18-1 at 2.) Sanchez told Plaintiff to hold on, and he would be released as soon as he could call operations to let them know what was going on. (*Id*.) After Sanchez placed Plaintiff in the holding cell, Plaintiff pushed the emergency button and Sanchez went back in to see what was the emergency. (*Id*.) Sanchez reports that Plaintiff said, "Go get me a grievance bitch." (*Id*.) Sanchez told Plaintiff he did not have one, but when he got back to his unit he could request one from the unit officer. (*Id*.) Plaintiff then started raising his voice and getting more agitated, and that is when he clenched his fists and took a step towards Sanchez in a fighting stance and said, "what are you going to do lets do this." (*Id*.) At that point, Sanchez said that he feared for his safety and felt threatened, so he told Plaintiff to turn around and

1  "cuff up." (*Id*.) Plaintiff complied, and as soon as the restraints were on him he leaned forward and
2  began to shake and scream saying the handcuffs were too tight as if he was in pain. (*Id*.) Nowell
3  Granados was on scene and viewed the entire incident, and when Plaintiff was on the ground he
4  intentionally kicked Sanchez in the right foot. (*Id*.) When Lieutenant Carlman arrived on scene,
5  Plaintiff became compliant, pictures were taken, and Plaintiff was evaluated by medical.  (*Id*.)
6  Moten and CNA Quinn were also present during this incident. (*Id*.)

7        Defendant Moten's report states that on February 2, 2014, Plaintiff was sitting in the
8  holding cell of the infirmary and began to press the call button inside the cell. (ECF No. 18-1 at
9  2.) Moten and Sanchez went to see what Plaintiff needed, and Plaintiff said he needed "an
10 emergency grievance and a grievance bitch," in a loud, aggressive tone. (*Id*. at 3.) Sanchez told
11 Plaintiff he did not have one at the moment, but he could request one from his unit officer once he
12 arrived back in his cell. (*Id*.) Moten reported that Plaintiff then began to step toward Sanchez and
13 Moten in a threatening manner, with his fist clenched in an aggressive stance. (*Id*.) Sanchez told
14 Plaintiff to stop and turn around to be restrained. (*Id*.) Plaintiff complied, but as soon as the
15 restraints were placed, Plaintiff began to yell and scream, "you're breaking my arm," and dropped
16 down to the floor and moved in a frantic motion on the ground. (*Id*.) Moten stated that he and
17 Sanchez were telling Plaintiff to calm down so they could take the restraints off. Nurse Granados
18 had come to see what Plaintiff was yelling about, and Plaintiff was still yelling in a frantic manner
19 and moving on the ground erratically, yelling, "you're breaking my arm." (*Id*.) When Lieutenant
20 Carlman arrived in the infirmary, Plaintiff stopped yelling and moving. (*Id*.) The restraints were
21 taken off, and Plaintiff was assessed by medical. (*Id*.)

22       Newton's report states that on February 2, 2014, he was assigned to search and escort at
23 SDCC, and he was conducting a cell search of Plaintiff's unit. (*Id*. at 3-4.) During the search, he
24 noticed Plaintiff staring at the ground, and then proceeded to fall, claiming it was a seizure. (*Id*. at
25 4.) During the fall, Plaintiff hit his head on Newton's knee while Newton was attempting to catch
26 him. (*Id*.) After Plaintiff started talking, Newton asserted that Plaintiff became verbally agitated.
27 (*Id*.) A "man down" was called, and Sanchez responded and took Plaintiff to the infirmary, along
28 with Moten. (*Id*.) Photographs were taken and an unusual occurrence report was completed. (*Id*.)

1 The unusual occurrence report states that a mild contusion was noted on Plaintiff's forehead. (ECF No. 18-4 at 2.) An unusual occurrence report dated February 5, 2014, from HDSP (after Plaintiff was transferred from SDCC), states that Plaintiff complained that an officer kneed him in the head while he was at SDCC, and that he started to fall because he was having a seizure. (ECF No. 1804 at 3.) The report indicates that there were no wounds or abrasions noted on the body. (*Id*.) Plaintiff complained of knee pain, but there was no swelling, discoloration or deformity. (*Id*.)

Nurse Nowell Granados stated that Plaintiff had pressed the buzzer, and Sanchez and Moten responded to the call. (ECF No. 18-1 at 4.) Nurse Granados heard Plaintiff screaming as if "he was in so much pain," and went and saw Plaintiff on the ground with handcuffs on, constantly moving and claiming he was in pain. (*Id*.) The officers tried to calm him down so they could take off the handcuffs, but he continued to move around. (*Id*.) Once the handcuffs were taken off, he was taken back to the observation room and no injuries were noted. (*Id*.) Nurse Granados indicated that his skin was intact, and he had a contusion from the fall he sustained when he was having a seizure prior to this incident. (*Id*.)

Nurse Quinn reported that she was working in the medication room when she heard an inmate screaming "it hurts, help me." (*Id*.) When she went into the hallway, the inmate was laying on the floor in handcuffs, flopping around and continued to yell, "help me." (*Id*.) The officers were standing aside observing the inmate. (*Id*.)

Plaintiff apparently submitted an informal level grievance about the incident with Sanchez and Moten, alleging abuse by the officers. Defendants provide a report of the response to the informal level grievance from Lieutenant Carlman. (ECF No. 18-2.) Carlman responded:

> I have firsthand knowledge of this incident and witnessed the events in the infirmary. At the time of this event I asked you if you were assaulted by Officer Newton and you told me no that you had hit your head when you fell to the ground. I was there in the Infirmary while you were in handcuffs yelling and screaming at the Officers. At no time did you complain of any injuries other than the bump on your head or that the handcuffs were on too tight. GRIEVANCE DENIED.

(ECF No. 18-2.)

On February 11, 2014, Plaintiff was seen for complaints of wrist numbness. (ECF No. 18-3 at 2.) The provider noted there were no signs of inflammation. His motor function was 5/5, and "sensory" was noted as ninety-five percent intact. (*Id*.) Plaintiff was seen again for complaints of wrist pain on February 24, 2014. (*Id*. at 3.) He was scheduled for sick call regarding a wrist problem on April 14, 2011, but the notes state that he refused to be seen. (*Id*.) He was prescribed ibuprofen pain packs. (*Id*. at 5.)

An unusual occurrence report dated February 10, 2014, indicates that a "mandown" was called, and Plaintiff stated that he had a lot of injuries since February 2, 2014. (ECF No. 18-4 at 4.) There is a notation regarding his wrists, and an indication Plaintiff claimed he had no feeling in the left wrist. (*Id*.)

In his response, Plaintiff claims that on February 2, 2014, he started going into a seizure and as he was falling to the floor Newton purposefully kneed him in the head. (ECF No. 29 at 4.) Sanchez and Nurse Granados came from medical to take him to medical on a gurney for his seizure. (*Id*.) Plaintiff claims that the nurse asked him about the knot on his head, and Plaintiff told the nurse that Newton had kneed him in the head. (*Id.* at 4-5.) At that time, Plaintiff contends that Sanchez gave him a mean stare telling him that another nurse who had not seen him told him to stay at medical, and then told Plaintiff to go with him to the back of the medical unit cell to be locked up. (*Id.* at 4.) Plaintiff claims that he asked Sanchez for a grievance and Sanchez said no three times and said Plaintiff was in a fighting stance, and told Plaintiff to turn around and "cuff up," so Plaintiff did. (*Id.*)

Plaintiff maintains that Sanchez then put the handcuffs on very tight. (*Id.*) Plaintiff asked Sanchez to loosen the handcuffs, but he would not, so Plaintiff dropped to his knees in pain, screaming for the handcuffs to be loosened. (*Id.*) Plaintiff states that the handcuffs were cutting his wrist and they were bleeding, and it "felt like a life time of pain." (*Id.*) He asserts that when Lieutenant Carlman arrived on the scene, Sanchez took the handcuffs off, and his wrists were bleeding very badly and he was in pain. (*Id.*) He was taken to a waiting van where he claims that Sanchez and Newton came to harass him at the gate before he was transported to HDSP, and they said, "you better not come back to this prison or it will get a lot worse." (*Id.* at 6.) He asserts that

1  when he got to HDSP, he asked to be seen by a doctor for his injuries, but he was not seen for
2  those injuries, but only for his seizures. (*Id.*)
3        Plaintiff provides a copy of his disciplinary hearing report which attributes a statement to
4  him that he never made any threats to Sanchez, but was complying with commands. (ECF No. 29
5  at 11.) He also provides a copy of a second level grievance where he asserted that he needed
6  medical attention for his injuries, and that at the time of the incident the nurses did not look at his
7  injuries after the incident with Sanchez. (ECF No. 29 at 15.)
8  **C. Analysis**
9        **1. Retaliation Claim Against Sanchez in Count I**
10        "Section 1983 provides a cause of action for prison inmates whose constitutionally
11  protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d
12  1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim
13  consists of five elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005))

      Sanchez maintains that he handcuffed Plaintiff because Plaintiff had taken a fighting stance in the holding cell, and he feared for his safety.

      Plaintiff has produced evidence in the form of his own affidavit that in Sanchez's presence, the nurse asked him about the knot on his head, and he responded that Newton had kneed him in the head. At that point, Plaintiff claims Sanchez gave him a mean stare and told Plaintiff to go to the back of medical to be locked up. There, Plaintiff asked for a grievance, and contends that Sanchez refused three times and said Plaintiff was in a fighting stance. Plaintiff claims that Sanchez then told Plaintiff to turn around and "cuff up" and he did, and then Sanchez put the handcuffs on very tight. His affidavit also states that following that incident, while he was awaiting transfer, Sanchez and Newton, told him he better not come back to SDCC or it would get a lot worse.

The court finds Plaintiff has produced evidence sufficient to raise a genuine dispute of material fact as to whether Sanchez placed the handcuffs on Plaintiff very tightly in retaliation for reporting Newton's alleged assault, or possibly because he asked for a grievance. A plaintiff "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)). Here, Plaintiff's statement that Sanchez gave him a mean stare after he reported Newton, and then denied his requests for grievances, before he put the handcuffs on him tightly meet that burden.

Accordingly, the court recommends that summary judgment be denied with respect to the retaliation claim against Sanchez.

**2. Excessive Force against Sanchez and Moten in Count II**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327).

In determining whether the use of force is excessive, courts are instructed to examine "the extent of the injury suffered by an inmate[;]" "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503

U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

An inmate need not establish serious injury; however, the lack of serious injury is relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). "The extent of injury may also provide some indication of the amount of force applied." *Id*.

That being said, not "every malevolent touch by a prison guard gives rise to a federal cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327); *see also Wilkins*, 130 S.Ct. 1178 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." (citing *Hudson*, 503 U.S. at 9)). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178-79. If the nature of the injuries is more than *de minimis*, but still "relatively modest," the inmate's damages will likely be limited. *See id*. at 1180.

Insofar as the claim against Moten is concerned, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer v. Brennan*, 511 U.S. 825, 932-33 (1994) (citations omitted). "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).

Defendants have produced evidence that Plaintiff became agitated when he could not go back to his cell, and pushed his emergency button and asked for a grievance. When Sanchez responded that he did not have any, and that Plaintiff could request a grievance from his unit officer when he returned, Plaintiff got agitated, clenched his fists and stepped towards Sanchez in a fighting stance. This caused Sanchez to fear for his safety, and at that point he told Plaintiff to turn around to be restrained, which Plaintiff did. Sanchez put the handcuffs on Plaintiff, and Plaintiff began to scream saying that the handcuffs were too tight, and stopped when Lieutenant Carlman arrived. Plaintiff was taken to medical and no injuries were noted.

Plaintiff, on the other hand, has presented evidence in the form of his affidavit, a disciplinary hearing report and grievance disputing Defendants' claims. Plaintiff puts forth evidence that he did not threaten Sanchez, and when Sanchez asked for him to be restrained, he complied. The handcuffs were too tight, and when he asked Sanchez to loosen them, Sanchez did not, causing Plaintiff to drop to his knees screaming in pain. According to Plaintiff, the handcuffs were so tight that it caused his wrists to bleed.

Again, the court finds that a genuine dispute of material fact exists as to whether Sanchez used excessive force and Moten's failure to intervene.

Defendants own evidence confirms that Plaintiff yelled out in pain after the handcuffs were put on; that he screamed, "you're breaking my arm," and dropped to the floor frantically. While Defendants argue that they were trying to get Plaintiff to calm down so they could take the handcuffs off, Nurse Quinn's reports indicate that while Plaintiff was lying on the floor yelling for help, the officers were standing aside observing him. While Defendants argue there is no evidence of any injury, Plaintiff claims that his wrists were bleeding and he suffered in pain afterwards. The records indicate that he was seen by medical for complaints of wrist pain in the weeks following the incident, and was prescribed ibuprofen. He also maintains that the medical staff did not even examine his injuries after this incident, such that they would not have been reflected in the medical records. He made the claim that his injuries were not evaluated in his grievance as well.

Defendants rely on *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989), *Palmer v. Sanderson,* 9 F.3d 1433, 1436 (9th Cir. 1993), and *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322-23 (9th Cir. 1995), for the proposition that a plaintiff asserting an excessive force claim stemming from the placement of handcuffs must exhibit physical injuries.

*Hansen*, involved a Fourth Amendment excessive force claim by an arrestee. The plaintiff claimed that handcuffs were put on in an abusive manner and that she was physically injured in the arrest. The court noted that Hansen visited the local medical center for treatment of injuries and had bruises on her wrist and complained of pain. Viewing this evidence in the light most favorable to the plaintiff, the court found the district court improperly granted summary judgment in favor of the officers.

In *Palmer*, which also involved a Fourth Amendment excessive force claim by an arrestee, the plaintiff claimed the officer fastened the handcuffs so tightly around his wrist that they caused pain and left bruises that lasted for weeks. The Ninth Circuit found the defendant did not produce evidence that would justify handcuffing the plaintiff so tightly that he suffered pain and bruises or to justify refusal to loosen the handcuffs after the plaintiff complained of pain. As such, the Ninth Circuit concluded that the district court's denial of summary judgment was proper.

Finally, *Anderson* also involved a Fourth Amendment excessive force claim stemming from a detention where the plaintiffs claimed the officers used excessive force in handcuffing them. The Ninth Circuit reversed the district court's grant of summary judgment on this issue, finding that viewing the facts in a light favorable to the plaintiffs, they could not say that as a matter of law the use of force was reasonable. Alexander claimed he was handcuffed for forty-five minutes to an hour, slammed against a car, with his legs kicked apart, carried and pushed into the back of a police car with his hands behind his back. He testified that he repeatedly asked for the handcuffs to be removed or loosened, but his request was initially denied. His hands became swollen and turned blue, and nine months later his hand was still swollen and numb. The Ninth Circuit concluded that if those facts were believed by the jury, it could conclude excessive force was utilized.

None of these cases stand for the proposition that to defeat summary judgment on a motion for excessive force involving the placement of handcuffs that there must be medical records which demonstrate there is evidence of physical injury such as bruising or swelling. Instead, they stand for the well-established legal premise that when the facts must be taken in the light most favorable to the non-moving party create a genuine dispute of material fact, summary judgment is not appropriate.

Here, while the medical records may not contain specific evidence of physical manifestation of a wrist injury, Plaintiff states in an affidavit that he suffered in pain while the handcuffs were on and that the tightness of the handcuffs caused his wrists to bleed; that he continued to suffer in pain afterwards; and, that the medical staff did not evaluate his injuries following the incident; and that he was subsequently seen for complaints of wrist pain and was

given ibuprofen pain packs.

If a jury were to believe Plaintiff's version of events, it could conclude that Sanchez used excessive force and Moten failed to intervene.

In sum, the motion for summary judgment should be denied as to the excessive force claim against Sanchez and Moten.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order:

(1) **DENYING** any request by Plaintiff to defer ruling on the motion for summary judgment under Rule 56(d);

(2) **DENYING** Defendants' Motion for Summary Judgment (ECF No. 18); and

(3) **DISMISSING WITHOUT PREJUDICE** the doe defendants and claims asserted against them (Count II) because Plaintiff failed to identify and timely serve those defendants.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: June 22, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE